Elliot Gale (Bar #263326)
egale@gajplaw.com
Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Patrice Lawrence-Shaw

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

Patrice Lawrence-Shaw

Plaintiff,

v.

Experian Information Solutions, Inc.; Wells Fargo Bank, N.A.

Defendants.

CASE NO. 2:22-cv-01512

COMPLAINT FOR DAMAGES:

1. Violation of Fair Credit Reporting Act;

COMES NOW Plaintiff Patrice Lawrence-Shaw (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b).
2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or

incomplete reporting of Plaintiff's mortgage account with Wells Fargo Bank, N.A. (hereinafter "WFB").

3. Here, WFB has filed to report a complete and accurate payment history regarding Plaintiff's reaffirmed account.

4. WFB's reporting makes it appear that Plaintiff has not made all of her mortgage payments.

5. The WFB account was also updated to confirm the incomplete/negative payment history after Plaintiff disputed the account.

6. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

7. Plaintiff's credit score has been adversely impacted by the reporting; she has been unable to rebuild her credit score and obtain favorable interest rates.

8. She has also been denied credit as a result of the WFB tradeline.

9. Third parties have been exposed to the inaccurate WFB tradeline.

10. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

11. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

12. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

13. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

14. Defendant Experian is a credit reporting agency located in the Central District of California.

15. WFB is a nationwide lender with locations throughout the State of California, including locations within the Central District of California.

## GENERAL ALLEGATIONS

16. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for accurate credit reporting in an attempt to purposefully undermine Plaintiff's attempt to improve her FICO Score.

17. In the alternative Plaintiff alleges that each and every Defendants' actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

18. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

19. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

20. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

21. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

22. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

23. There are 28 FICO Scores that are commonly used by lenders.

24. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

25. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

26. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

27. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

28. Each of the five factors is weighted differently by FICO.

29. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

30. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

31. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.

32. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

33. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

34. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported.

**Metro 2**

35. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

36. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

37. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

38. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

39. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:

   a. The CDIA offers a FCRA certificate program for all CRAs.
   b. The CDIA offers a FCRA awareness program for all CRAs.
   c. The CDIA offers a FCRA Certificate program for DFs.
   d. The CDIA offers a FCRA awareness program for DFs.
   e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of

the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

40. The CDIA's Metro 2 is accepted by all CRAs.

41. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

42. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

43. The three main credit bureaus helped draft the CRRG.

44. The CRRG is not readily available to the public. It can be purchased online for $229.45.

45. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

46. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

47. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

48. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

**e-OSCAR**

49. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

50. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

51. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

**Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator**

52. When a consumer files bankruptcy certain credit reporting industry standards exist.

53. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

54. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

55. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

56. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

57. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

58. CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed, is active, but no discharge entered. This is usually translated on a consumer

credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a trade line. Such reporting alerts any potential lender that the account is no longer in a collectable status but is being handled by a Chapter 13 trustee.

59. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

60. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

61. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.

62. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

63. The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

64. The lack of a CII reported also suggests that creditors are free to collect against a consumer as an individual or that no stay exists to prevent *in personam* collection activity.

65. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

66. Under the Fair Credit Reporting Act a bankruptcy can be reported for ten years.

67. The ten-year rule for reporting runs from the date the bankruptcy was *filed.*

68. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

69. The more time that has passed since the filing of the bankruptcy, the less negative impact the bankruptcy will have on a consumer's FICO Score.

Failure to reference the bankruptcy filing (CII field) and or the correct petition date shall result in a lower FICO Score resulting in those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

**Reaffirmation Process**

70. When a consumer files for chapter 7 bankruptcy protection the usual end result is that all of the consumer's secured and unsecured accounts will be discharged through the bankruptcy process.

71. When a consumer wishes to retain collateral secured by a creditor's lien, a consumer will often enter into a reaffirmation agreement with that creditor.

72. The reaffirmation process does not discharge the consumer's personal liability on the loan.

73. An account can be reaffirmed or partially reaffirmed.

74. The preferred method of reporting a reaffirmation through bankruptcy is for the CII "R" to be reported.

75. Reporting the CII "R" will remove any bankruptcy notation and indicate that the loan was reaffirmed and not discharged.

76. The CRRG specifically states that the CII "E" should not be reported.

**Plaintiff's Bankruptcy**

77. Plaintiff filed for Chapter 7 bankruptcy protection on April 19, 2021 in order to discharge various debts and improve Plaintiff's credit worthiness and FICO score.

78. Plaintiff received a Chapter 7 discharge on July 21, 2021.

79. Prior to the entry of her chapter 7 discharge Plaintiff entered into a reaffirmation agreement with WFB.

80. The reaffirmation agreement was filed on July 8, 2021.

81. On August 30, 2021 Plaintiff ordered a credit report from Experian, Equifax, and TransUnion to ensure property reporting by Plaintiff's creditors after her bankruptcy.

82. Plaintiff noticed a tradeline from WFB on the August 30, 2021 credit report that was reporting inaccurate, misleading, and incomplete information regarding the WFB account.

83. WFB was reporting that the account as closed and included/discharged in bankruptcy rather than open, current, and reaffirmed.

84. In response, Plaintiff disputed the inaccurate WFB tradeline via certified mail with Experian, Equifax and TransUnion in September of 2021.

85. Plaintiff's dispute letter specifically put WFB on notice that Plaintiff had reaffirmed her mortgage with WFB and it should not be reporting as included/discharged in bankruptcy but rather open and current.

86. Plaintiff included her mortgage payment history to WFB along with the reaffirmation agreement to support her dispute.

87. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter, and in response, sent Plaintiff's dispute to WFB via an ACDV through e-OSCAR.

88. On October 26, 2021, after the statutory time period had passed for Plaintiff to receive a reinvestigation report from the CRAs, Plaintiff ordered a second credit report from Experian, Equifax, and TransUnion for the sole purpose of ensuring Plaintiff's mortgage account with WFB had been properly updated.

89. The WFB account on Plaintiff's credit reports still listed the account as having an incomplete / negative payment history.

**Inaccuracy – WFB**

90. Plaintiff was frustrated to see that Defendant WFB did not properly update the account but instead continued to report Plaintiff's account history as incomplete.

91. WFB did not update Plaintiff's account history to indicate that Plaintiff made timely payments and continued to report a negative notation for several months in 2021.

92. Such reporting makes it appear that Plaintiff is not making her ongoing mortgage payments.

93. WFB appears to have reported the CII "R" correctly but did not provide complete payment information regarding the payments made by Plaintiff to WFB.

94. Such reporting remains entirely inaccurate.

**Willfulness**

95. WFB had actual knowledge of the reaffirmation but refused to update the payment history.

96. This was not a negligent act by WFB but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore Plaintiff's credit through bankruptcy.

97. WFB, while knowing the account was reaffirmed, did not update the account's payment history.

98. Once WFB received Plaintiff's dispute, rather than acknowledge error with the payment history, it confirmed to Experian that the payment history did contain negative marks.

99. WFB continues to receive and process Plaintiff's mortgage payments but has filed to update the tradeline to reflect those payments.

100. WFB was provided with a copy of its own payment history with Plaintiff's dispute, but instead did not update the payment history.

**Damages**

101. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

102. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by WFB reporting as that reporting has been disclosed and disseminated to various third-party lenders. Until WFB's reporting has been properly updated Plaintiff's credit continues to be harmed.

103. Plaintiff has been denied credit on various occasions as a result of WFB's reporting.

104. The actions of Experian and WFB as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

**FIRST CAUSE OF ACTION**

(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**Experian Information Solutions, Inc. – Failure to Assure Credit Reporting Accuracy**

105. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

106. Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

107. Had Experian maintained reasonable procedures to assure maximum accuracy Experian would never have allowed Defendant WFB to report the account as described herein.

108. As a result of Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

109. The violations described herein by Experian was willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

110. Experian intentionally send consumer disputes to employees who do not live within the continental United States.

111. This is done intentionally to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

112. These employees for Defendant Experian receive little to know training concerning how to accurately report consumer debt.

113. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)

114. Experian employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

115. Experian has intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

116. Experian also allowed WFB to report inaccurate information about the account after completion of Plaintiff's bankruptcy proceeding despite being provided with a copy of the filed/approved reaffirmation agreement and verification that Plaintiff was timely making her ongoing vehicle payments to WFB.

117. Experian knew Plaintiff reaffirmed the WFB account and was provided with a complete payment history verifying there were no missed payments, yet Experian continued to allow WFB to report an incomplete payment history.

118. Given that Experian helped draft the CRRG, and Plaintiff specifically referenced industry guidelines in the dispute letter Experian knew that the WFB account was not reporting in a manner consistent with industry standards i.e. accurate, but chose to do nothing.

119. Consequently, Defendant Experian is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

120. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION

(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b)) Against Defendants)

**WFB – Failure to Reinvestigate.**

121. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

122. 15 USC §§ 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

123. Defendant WFB violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

124. The CRAs provided notice to WFB that Plaintiff was disputing the inaccurate and misleading information, but WFB failed to conduct a reasonable investigation of the information.

125. Based on Plaintiff's dispute, WFB should have known its account was reaffirmed and the payment history contained no negative account information.

126. The most basic investigation would include a simple review of well-established credit reporting industry standards.

127. Plaintiff alleges WFB did not review well established industry standards for credit reporting.

128. If WFB had reviewed such standards WFB would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.

129. Such an investigation would be unreasonable.

130. Plaintiff also alleges that WFB did not investigate the status of the account, payment history, and terms of the reaffirmation agreement.

131. WFB continues to accept vehicle payments from Plaintiff on the account – at a minimum it should know timely payments have been made on the account.

132. The lack of investigation is unreasonable.

133. Plaintiff further alleges that WFB have not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Experian – Failure to Reinvestigate Disputed Information.**

134. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

135. After Plaintiff disputed the accounts mentioned above, Experian was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC § 1681i-(a)1.

136. Experian failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

137. Plaintiff alleges that Experian has its own independent duty to conduct a reinvestigation 15 USC 1681i-(a)1.

138. Experian is not a passive entity bound to report whatever information a data furnisher, such as WFB, provides.

139. Plaintiff alleges that Experian is readily familiar with Metro 2 guidelines and credit reporting industry standards given that Experian helped draft said guidelines.

140. Given the aforementioned, Plaintiff alleges that Experian can and does suppress inaccurate information from being reported when DFs provide inaccurate information.

141. Experian can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

142. Experian failed to conduct a reasonable investigation because any basic investigation would have uncovered that certain DFs were not following credit reporting industry standards.

143. Experian would have known that Plaintiff reaffirmed her vehicle loan because her dispute included a copy of the filed reaffirmation agreement and complete payment history.

144. Experian would have known that failure to report the complete payment history was in violation of industry standards.

145. Experian therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

146. Experian intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian's general policy is to simply parrot whatever information a data-furnishers sends.

147. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

**THIRD CAUSE OF ACTION**

(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4)) Against Defendants)

**Experian Information Solutions, Inc. – Failure to Review and Consider All Relevant Information.**

148. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

149. Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

150. As a result of Experian's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

151. The violations by Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

152. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

153. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**FOURTH CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants)

**Experian Information Solutions, Inc. – Failure to Delete Disputed and Inaccurate Information.**

154. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

155. Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

156. As a result of Experian's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

157. The violations by Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

158. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

159. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;
5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Dated: March 7, 2022

**Gale, Angelo, Johnson, & Pruett, P.C.**
*/s/ Joe Angelo*
Joe Angelo
Elliot Gale
Attorneys for Plaintiff